**ORDERED** that this Court's May 7, 1997 opinion is **VACATED** because it is inconsistent with *United States v. McKie,* 112 F.3d 626, 36 V.I. 367 (3d Cir.1997).

**CHESAPEAKE RANCH WATER COMPANY, Plaintiff,**

v.

**THE BOARD OF COMMISSIONERS OF CALVERT COUNTY, Defendant.**

No. AW–03–2527.

United States District Court, D. Maryland, Southern Division.

Jan. 12, 2004.

Randall M. Lutz, Susan Mae Euteneuer, Hodes, Ulman, Pessin, and Katz, PA, Towson, MD, William Roger Truitt, Piper Rudnick, LLP, Baltimore, MD, Stephen D. Ball, Mitchellville, MD, for Plaintiff.

Jefferson V. Wright, Todd M. Reinecker, Miles and Stockbridge, PC, Baltimore, for Defendant.

### *MEMORANDUM OPINION*

WILLIAMS, District Judge.

This suit arises under Plaintiff Chesapeake Ranch Water Company's claim for a permanent injunction and a writ of mandamus against Defendant Board of Commissioners of Calvert County ("County").

Currently pending before the Court is Defendant's Motion for Summary Judgment.

The motion has been fully briefed by all parties. On December 8, 2003, the Court held a hearing on the pending motion. Upon consideration of the arguments made in support of, and in opposition to, the respective motions, the Court makes the following determinations.

## I. *BACKGROUND*

Plaintiff ("Chesapeake") is a not-for-profit cooperative providing water and fire protection to approximately 10,000 customers in Calvert County. Chesapeake provides water to its customers in Chesapeake Ranch Estates through a grant it received from the County in 1960, which was amended in 1998 and 1999 to include additional areas.[1] A large commercial development, to include both the Lusby Town Center and the Patuxent Business Park, is scheduled to be built adjacent to Plaintiff's water facilities, and the County intends to supply water to the development.

Plaintiff filed this suit, as well as a Motion for Preliminary Injunction, alleging that Defendant has violated 7 U.S.C. § 1926(b) (also known as the Rural Development Act)[2], Md.Code Ann., Environment Art. § 9–918(a), and Md.Code Ann., Art. 25 § 3D(b)(1) (an *ultra vires* claim). There was a hearing scheduled for the Motion for Preliminary Injunction on November 10, 2003, but Plaintiff moved to withdraw this motion after the Defendant agreed not to pursue the specific actions sought to be enjoined during the pendency of this case. After conducting some preliminary discovery in anticipation of the November hearing, Defendant filed the instant Motion for Summary Judgment.[3]

Despite the extensive briefing that has occurred in this case prior to the Motion for Summary Judgment, for the first time in the pendency of this case, Plaintiff makes the assertion in its opposition brief

---

**1.** Unless otherwise noted, when mentioning the "franchise area" in this Opinion, the Court refers to the area included in the original franchise agreement as well as in the subsequent amendments.

**2.** 7 U.S.C. § 1926(b) states,

The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such an area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

**3.** The Motion for Summary Judgment was briefed in full, pursuant to the local rules of this District. *See* Local Rule 105.2 (requiring order of the Court to file surreply). Additionally, as noted *supra*, a hearing was conducted on December 8, 2003. Despite this fact, Plaintiff filed an affidavit pursuant to Fed.R.Civ.P. 56(f), accompanied by a letter, in which it attempted to make additional arguments after the hearing. Finding this inappropriate, and because the Court gave Plaintiff every opportunity to make its case during the hearing, this Court will not consider either of these filings for purposes of deciding this motion. Plaintiff argues that it did not have sufficient chance to file the affidavit prior to the hearing because there was inclement weather on the only business day between the filing of Defendant's Reply brief, which pointed out that no such affidavit was filed, and the hearing. However, Plaintiff first asserted that the instant motion was not properly filed at this early stage of the proceedings in its Opposition to Defendant's Motion for Summary Judgment, which was filed two weeks prior to the hearing. Pursuant to Fed.R.Civ.P. 56(f), any consideration the Court gives to such a contention is to be based upon affidavit, not mere assertion, so the Plaintiff has not been prejudiced by either the brevity of time between the filing of Defendant's Reply brief and the hearing or the inclement weather.

that the disputed area falls within its franchise. Despite the close proximity, the Court finds that the commercial park is not incorporated in Plaintiff's franchise area, notwithstanding Plaintiff's repeated attempts to alter the franchise agreement to include it. Since the park was never and is not now included within the Plaintiff's franchise area, the Court believes that the County may continue to make decisions that affect the disputed area. To this end, it is proceeding with its own proposal, which has been approved at both the county and the state level, to meet the water needs of the new commercial lot.

## II. *DISCUSSION*

### A. **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P. 1). The court is required to "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Evidence submitted by the non-movant is to be believed and all justifiable inferences drawn in his or her favor. However, a party must use more than mere speculation or compilation of inferences to create a genuine dispute of material fact. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

In its response to a motion for summary judgment, the non-moving party must show evidence of specific facts from which the finder of fact could reasonably return a verdict in his or her favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2729.1 (3d.1998). In this way, the opposing party demonstrates that he has discovered admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. If the opponent fails to establish a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could find against the moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. **Analysis**

#### 1. *Federal Claim*

The federal question presented in this case relies on 7 U.S.C. § 1926(b), the Rural Development Act. However, Plaintiff has failed to make an adequate showing that its claims properly fall under the pro-

tection of this statute. Crucial to this finding is the fact that Chesapeake's current customer base will remain unaltered by the County's plans. As Plaintiff itself stated during oral argument and in its amended complaint, it is the largest independent, non-profit public water utility in the state, let alone the county. This will not be affected simply because the County chooses not to permit Chesapeake to also service the potentially more profitable planned commercial park. The entire purpose of 7 U.S.C. § 1926(b) is to protect rural water associations, and based on the facts thus far presented, Plaintiff faces no actual damages as a result of this business park being built and serviced by the County.[4]

During oral argument, Defendant broke its grounds for summary judgment, as briefed, into three perceived legal deficiencies of Plaintiff's overall claim under 7 U.S.C. § 1926(b). The Court will address the first of these in detail, and then consider the other two as essentially one argument.

### a. *Offensive v. Defensive Use of 7 U.S.C. § 1926(b)*

The Sixth Circuit addressed similar issues to the instant case in a very recent opinion issued during the pendency of these proceedings. In *Le–Ax Water District v. City of Athens, Ohio,* 346 F.3d 701 (6th Cir.2003), Le–Ax Water District ("Le–Ax") brought suit against the City of Athens, Ohio ("Athens"), seeking a declaratory judgment that the city's agreement to provide water to an area of proposed development violated 7 U.S.C. § 1926(b). The property to which both parties hoped to supply water was located outside the geo-graphical boundaries of each. The Sixth Circuit looked closely at two issues with respect to Le–Ax: 1) whether it was physically capable of serving the new area and 2) whether it had the legal right to do so. Although the Court ultimately found that Le–Ax had satisfied both of these requirements, it ruled nonetheless that Le–Ax could not invoke the protection of 7 U.S.C. § 1926(b). The Court commented,

> Central to our conclusion is the fact that Le–Ax is not seeking to use the statute to protect its users or territory from municipal incursion in this case. It instead is seeking to use the statute to foist an incursion of its own on users outside of its boundary that it has never served or made agreements to serve.

*Id.* at 707. In reaching its decision, the Sixth Circuit examined the legislative history of 7 U.S.C. § 1926(b). Interpreting the language to suggest a goal of protecting territories already served by rural water companies from intrusion by municipalities, the Court deduced that the intent of Congress was to furnish rural water associations with a defense to encroachment, not an offensive tactic to enlarge their service areas.

Truly, the cases discussing the Rural Development Act reflect that the statute thus far has been used successfully only when a municipality actually encroached into a rural water association's existing territory. *See generally, City of Madison, Miss. v. Bear Creek Water Association, Inc.,* 816 F.2d 1057 (5th Cir.1987)(finding curtailment where municipality attempted to condemn facilities within municipal boundaries already operated by a rural water association); *Rural Water District*

---

**4.** The Court notes that Plaintiff has argued the possibility of harm should the Aquia Aquifer begin to diminish if the Defendant also drills into it. However, the evidence in this respect is hardly dispositive. In truth, it appears that no one can say with any certainty what strain, if any, will be placed on this aquifer and what effect, if any, this will have on Chesapeake's operations. This issue requires far too much speculation for the Court to use it as a basis to find that 7 U.S.C. § 1926(b) applies to the Plaintiff.

*No. 3 v. Owasso Utilities Authority,* 530 F.Supp. 818 (N.D.Okla.1979)(finding violation of 7 U.S.C. § 1926(b) in municipality's expansion of water and sewer services into the area served by association).

Although finding the ruling in *Le–Ax* persuasive, the Court notes at the outset that the facts of that case are not the same as those in the case *sub judice.* In that case, the disputed area lay outside the realm of *both* parties' service areas. In the instant case, the Court finds the area in controversy to be outside the service territory of the Plaintiff, and within the County's borders. This point is intensely challenged by the Plaintiff. Ultimately, however, the Court is not persuaded by Chesapeake's arguments in this regard. First, Plaintiff argues that the language in the original franchise agreement was ambiguous and that the final paragraph, in particular the phrase "in that area," opens itself to the interpretation that the franchise area is broader than the Defendant avers. This contention carries no weight because, when construed as a whole, the agreement clearly reflects that the service area was limited at that time to the Chesapeake Ranch Estates. *See* Plaintiff Exhibit 1 [5] (referencing Chesapeake's "desires to supply water as a public utility to homes in Chesapeake Ranch Estates situate in the First Election District of Calvert County, Maryland, consisting of about eight hundred acres of land").

The second argument advanced by the Plaintiff, while more detailed, likewise fails to sway this Court. Chesapeake maintains that, at some point in the history of the company, the County permitted it to service the country club located directly north of the Chesapeake Ranch Estates. Moreover, the County did so without requiring Plaintiff to first obtain an amendment to the original franchise agreement, though both parties realized that the club was not within the technical boundaries outlined as the franchise area. Although Plaintiff never referred to it as such, it advances an estoppel theory, arguing that this action did one of two things: 1) extended the franchise area, or 2) acted as the County's waiver of its right to require amendments to the franchise area in order to grant rights to provide water utilities. The Court does not believe the County's prior action did either of these things. However, even assuming *arguendo* that the first proposition is true, then the franchise area was only broadened to the extent that it now includes the country club. The country club area, while immediately adjacent to the disputed area, does not include any part of it and thus, does not bring the disputed area within the franchise. The mere fact that the County agreed to extend the franchise area in the past, or even permitted the Plaintiff to stretch its service area beyond the borders of the franchise agreement does not mandate that the County do so every time the Plaintiff wishes to expand its service area.

Indeed, the Plaintiff's own statements during the pendency of this case belie the argument it now advocates. For example, in the Amended Complaint, the prayers for relief include a request to "issue a permanent mandamus to require the Commissioners to grant Chesapeake Ranch Water Company a franchise to provide water to all potential users in the vicinity of Lusby, Maryland and Chesapeake Ranch Estates." *See* Amended Complaint, page 11. Throughout the entirety of this case, brief though it may be, Plaintiff has been argu-

---

**5.** Because Defendant numbered its exhibits sequentially beginning with its initial motion and continuing with number 19 in its Reply brief, and the local rules preclude the filing of a surreply absent leave of the Court, all referenced exhibits will be cited as "Defendant Exhibit [number]" or "Plaintiff Exhibit [number]."

ing from the standpoint that the area in dispute was not within its franchise, and now, facing summary judgment, decides that part of the area falls within its boundaries. It almost appears as though the Plaintiff is trying to *create* a dispute of material fact by now attempting to reinterpret language in a contract entered into over 40 years ago. As the Defendant points out, to survive summary judgment, the non-moving party must show a *genuine* dispute of material fact. Although evidence submitted by the non-movant is to be believed, only those inferences that are justifiable are to be drawn in his or her favor. *See Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Moreover, a party must use more than mere conjecture to create a genuine dispute of material fact. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

■ In this case, it appears that the protected entity is attempting to annex the new development area, although the territory has never been included in its franchise agreement. Basically, Chesapeake seems to be arguing that, because its district is located in such close proximity to the new development, it should be able to take over the service to that area as well. The proposed business development, while adjacent to the rural association's protected coverage area, is not within it, and simply because Chesapeake's territory runs adjacent, does not mean that it can annex the new development into its franchise area. *See U.S. v. Hillhaven Corp.,* 960 F.Supp. 259 (D.Utah 1997)(holding that a municipality may not annex the area

served by the district to replace the rural water supplier).[6] Therefore, the Court finds that any claim brought by Chesapeake under the Rural Development Act must be dismissed as a matter of law.

> b. *Legal Right or Duty Must Exist for Rural Association to Require Protection Under 7 U.S.C. § 1926(b) and Chesapeake Does Not Stand Ready, Willing and Able to Provide Disputed Service*

■ To require protection under 7 U.S.C. § 1926(b), the party seeking such protection must show that (1) it is indebted to the FmHA, and (2) the municipality has encroached on an area where the entity in question "made service available," *North Alamo Water Supply Corp. v. City of San Juan, Texas,* 90 F.3d 910, 915 (5th Cir.1996)(internal citations omitted). It is clear that Chesapeake is an indebted entity, but it is not at all clear that they have "made service available" to the disputed area. Beyond the fact that the new development in Calvert County is not within the franchise of Chesapeake, it is also questionable whether Plaintiff stands ready to make water available to the commercial park.

There is only one Fourth Circuit case on point. *See Bell Arthur Water Corporation v. Greenville Utilities Commission,* 173 F.3d 517 (4th Cir.1999). Bell Arthur was a water company providing water to rural areas in North Carolina. The city of Greenville, NC annexed an area called Ironwood. During the initial beginnings of the development, the developer requested that the city provide water services. The Commission agreed to provide these ser-

---

**6.** While recognizing that this case deals with the municipality encroaching on the water association's territory, the Court nonetheless finds it relevant because this Court can think of no reason why the association should be permitted to encroach upon or annex new property when municipalities are precluded from doing so. This is precisely the type of offensive use of the statute precluded by the Sixth Circuit in *Le–Ax.*

vices and granted the developer's petition for annexation. After negotiations with Bell Arthur over whom should provide water, the Commission referred the developer to Bell Arthur, who had a six-inch pipeline already in place in the disputed area. Later, the city declared Ironwood an "integral part of the city" and ordered pipe to construct the necessary groundwork to provide water service to it. Although Bell Arthur had a six-inch pipe running through the property in dispute, and had even provided service to 8–20 customers at some point, both parties agreed that this piping was unsuitable to serve the entire development. Bell Arthur itself asserted that a 14–inch pipeline was necessary, but did not even take the steps toward procuring a loan for this piping until a year after agreeing to provide the service to Ironwood. Finding the steps taken by Bell Arthur insufficient, the Fourth Circuit stated, "Inherent in the concept of providing service or making service available is the *capability* of providing service or, at a minimum, of providing service within a reasonable time," *Id.* at 526 (citing *North Alamo Water Supply,* 90 F.3d at 916).

Plaintiff argues that, with infrastructure in place literally across the street from the disputed area, it could provide water service to the business park within a matter of days, if needed. However, as Defendant correctly asserts, there is more to the issue of making water available than the physical capability of doing so. The permit issued to Chesapeake by the Maryland Department of the Environment ("MDE") only authorizes Plaintiff to provide water to be used by the Chesapeake Ranch Estates subdivision. *See* Defendant Exhibit 8. *Bell Arthur* clearly articulated that a prerequisite to a water association falling under the purview of 7 U.S.C. § 1926(b) is a legal duty, as established by state law, to provide water service to the area brought into question. *Id.* at 526. Chesapeake's permit, valid until 2008, does not grant it

the authority to provide water service to any area other than the Chesapeake Ranch Estates subdivision, which both parties agree does not encompass the disputed commercial park. Therefore, Plaintiff does not possess the legal *right* to supply water to the disputed area, much less hold a duty to do so. As such, it does not have the capability of providing water service to the emerging business development. *Id.*

### 2. *State Claims*

28 U.S.C. § 1367(c)(3) provides federal trial courts with discretion whether to exercise supplemental jurisdiction when the only claim with original federal jurisdiction must be dismissed, leaving only claims grounded in state law. Indeed, the Supreme Court has encouraged federal courts to promote both comity and justice by avoiding "[n]eedless decisions of state law," particularly where the federal claims are dismissed before trial. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the Fourth Circuit offered guidance in this area as well in *Farlow v. Wachovia Bank of North Carolina,* 259 F.3d 309, 316–17 (4th Cir.2001)(holding that state claims dismissed without being decided on the merits are to be dismissed without prejudice). In keeping with these decisions, the Court will not exercise supplemental jurisdiction over Chesapeake's claims based upon state law, but will dismiss the claims without prejudice.

### III. *CONCLUSION*

For the reasons stated above, the Court finds that there is no genuine issue of material fact presented in this case and that the Defendant is entitled to judgment as a matter of law. Therefore, the Court will grant Defendant's Motion for Sum-

mary Judgment. An Order consistent with this Opinion will follow.