PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CHESAPEAKE RANCH WATER
COMPANY,

*Plaintiff-Appellant,*

v.

THE BOARD OF COMMISSIONERS OF
CALVERT COUNTY,

*Defendant-Appellee.*

No. 04-1205

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-03-2527-8-AW)

Argued: November 30, 2004

Decided: March 16, 2005

Before WILKINS, Chief Judge, SHEDD, Circuit Judge,
and Norman K. MOON, United States District Judge
for the Western District of Virginia,
sitting by designation.

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Shedd and Judge Moon joined.

## COUNSEL

**ARGUED:** William Roger Truitt, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellant. Jefferson Vaughan Wright, MILES &

STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** John E. Griffith, Jr., Dorothy M. Guy, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellant. E. Hutchinson Robbins, Jr., Todd M. Reinecker, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee.

---

## OPINION

WILKINS, Chief Judge:

The Chesapeake Ranch Water Company (Chesapeake) appeals an order of the district court granting summary judgment in favor of the Board of Commissioners of Calvert County, Maryland (the County) in this action seeking protection under a provision of the Consolidated Farm and Rural Development Act of 1961 (CFRDA), *see* 7 U.S.C.A. § 1926(b) (West 1999). Chesapeake argues that § 1926(b) prohibits the County from providing water service to two new commercial developments presently under construction adjacent to Chesapeake's service area. Finding no merit to Chesapeake's arguments, we affirm.

I.

A recitation of the facts appears in the opinion of the district court. *See Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert County*, 301 F. Supp. 2d 424, 425-26 (D. Md. 2004). We recount them briefly here.

Chesapeake is a nonprofit water association formed in 1960 to provide drinking water and fire protection services to citizens in Calvert County. In 1961, the County, which under Maryland law has plenary authority over water and sewer matters within its borders, *see* Md. Ann. Code art. 25, §§ 3(c), 3D(b) (Supp. 2004), granted Chesapeake authority to provide water service to a subdivision known as Chesapeake Ranch Estates. On three subsequent occasions during 1998 and 1999, the County expanded Chesapeake's franchise area to include lots in Lusby Town Square, a subdivision adjacent to Chesapeake Ranch Estates.

In response to substantial growth in Calvert County, a number of new developments are being constructed in the county. At issue here are two new developments, the Lusby Town Center and the Patuxent Business Park, which are under construction adjacent to, but not within, Chesapeake's existing franchise area. In 2001, Chesapeake presented a formal offer to the County to provide water service to the new developments. The County rejected the offer. Instead, the County resolved to and has begun the process of extending the County-owned Solomons water facility to provide service to the new developments. The Solomons facility is located approximately two miles from the developments.

Alleging that the County's proposed extension of the Solomons facility violates both § 1926(b) and Maryland state law, Chesapeake filed this action seeking broad injunctive relief to prevent the County from continuing with its plan to provide service to the new developments. The district court granted summary judgment in favor of the County on the federal claim, ruling that § 1926(b) afforded Chesapeake no basis for relief against the County. The court then declined to exercise supplemental jurisdiction over the remaining state law claims, *see* 28 U.S.C.A. § 1367(c)(3) (West 1993), dismissing those claims without prejudice.[1]

## II.

The CFRDA is part of the Agricultural Act of 1961, which Congress enacted for the purposes, among others, of improving and protecting farm prices and promoting agricultural development. *See* S. Rep. No. 87-566, at 1 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2243, 2243. Section 1926 of the CFRDA "specifically authorizes federal loans to nonprofit water service associations to promote the 'conservation, development, use, and control of water' to assist farmers, ranchers, farm tenants, and other rural residents." *Bell Arthur Water Corp. v. Greenville Util. Comm'n*, 173 F.3d 517, 519 (4th Cir. 1999) (quoting 7 U.S.C.A. § 1926(a)(1)). "By including water service to 'other rural residents' as part of an agricultural program, Congress intended (1) to reduce peruser cost resulting from the larger base of

---

[1]Chesapeake does not challenge on appeal the dismissal of its state law claims.

users, (2) to provide greater security for the federal loans made under the program, and (3) to provide a safe and adequate supply of water." *Id.* at 519-20.

Congress sought to protect federally indebted, nonprofit water associations from "competitive facilities, which might otherwise [be] developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." S. Rep. No. 87-566, at 67, 1961 U.S.C.C.A.N. at 2309. Accordingly, Congress enacted § 1926(b), which provides:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C.A. § 1926(b). To qualify for protection under § 1926(b), the water association must establish that (1) it is an "association" within the meaning of the CFRDA, (2) it has a qualifying federal loan outstanding, and (3) it has provided water service or made it available to the disputed area. *See Le-Ax Water Dist. v. City of Athens, Ohio*, 346 F.3d 701, 705 (6th Cir. 2003).

The protection afforded by § 1926(b) is limited to the area in which the association provides or makes available water service and to the time period during which its federal loan is outstanding. *See Bell Arthur*, 173 F.3d at 520. Additionally, § 1926(b) protects against only certain forms of competitive behavior, including "curtailment or limitation of the associations' service areas through annexation or through the imposition of conditions for service such as the requirement of a franchise, license, or permit." *Id.*

Chesapeake argues that summary judgment in favor of the County was inappropriate for three reasons: (1) the County's plan to provide

service to the new developments would limit or curtail Chesapeake's service by invading a location to which Chesapeake has made service available; (2) the County's plan to tap into the aquifer from which Chesapeake presently draws its water supply would limit or curtail Chesapeake's ability to serve its existing franchise area; and (3) disputed issues of material fact existed as to the scope of Chesapeake's franchise area. We address each of these arguments in turn.

A.

Chesapeake first argues that § 1926(b) affords it the exclusive privilege of providing water service to the new developments. As a threshold matter, we note that neither party disputes that Chesapeake is a qualifying "association" under the statute. Nor do the parties question that Chesapeake has a qualifying federal loan outstanding. Therefore, this issue turns on whether Chesapeake has provided or made available water service to the new developments.

The district court ruled that because the new developments were not within the geographic boundaries of the franchise area formally granted to Chesapeake by the County, § 1926(b) did not afford Chesapeake the exclusive privilege of serving the new developments. The court reasoned that Chesapeake could not use the protections of § 1926(b) "offensively" to expand the geographic boundaries of its franchise area; the statute could only be used "defensively" to protect the territory already within its franchise area. *See Chesapeake Ranch Water*, 301 F. Supp. 2d at 427-29. Chesapeake contends that the district court interpreted § 1926(b) too narrowly. Because the locations of the new developments were adjacent to Chesapeake's existing franchise area, and because Chesapeake was physically capable of providing water service to the new developments, Chesapeake contends that it had already made available water service to the developments, and thus it was entitled to protection under § 1926(b) from competition by the County. We disagree.

The test for whether a water association has provided or made available water service for purposes of § 1926(b) varies among the courts of appeals. Some courts have held that a water association has provided or made available service if it can demonstrate (1) the physical capability to provide service to the area within a reasonable time,

and (2) the legal right under state law to serve the area. *See Rural Water Sys. #1 v. City of Sioux Ctr.*, 202 F.3d 1035, 1037 (8th Cir. 2000); *cf. Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1203 (10th Cir. 1999) (focusing primarily on whether water association "has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time"). Other courts permit an association to prove that it has provided or made available service by demonstrating that it has a duty (not merely a right) under state law to provide service to the disputed area. *See North Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 915-16 (5th Cir. 1996) (per curiam); *cf. Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir. 1988) (holding that water association had made available water service "by virtue of its line adjacent to the property and its *responsibilities* to applicants within its territory" (emphasis added)).[2] The test articulated by the Sixth Circuit in *Le-Ax* is the most stringent, requiring a water association to demonstrate that (1) it is physically capable of serving the area,[3] (2) it has the legal right under state law to do so, and (3) the disputed area is already within the geographic boundaries of the association's franchise area. *See Le-Ax*, 346 F.3d at 707.

We are persuaded that the three-part test articulated by the Sixth Circuit in *Le-Ax* best effectuates Congress' intent in passing § 1926(b). As in all cases of statutory interpretation, our inquiry

---

[2]In *Bell Arthur*, 173 F.3d at 526, a panel of this court suggested that *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 235-37 (6th Cir. 1996), and *Glenpool* stood for the proposition that a legal duty under state law was required in all cases in order to invoke the protections of § 1926(b). This suggestion, however, was not necessary to the holding in *Bell Arthur*, and subsequent cases have made clear that while a legal duty is one way to demonstrate that water service has been made available, it is not a prerequisite to invoking § 1926(b) in every case. *See Le-Ax*, 346 F.3d at 706 n.1 ("We have only required (like the Tenth Circuit) a state-law *right* (not duty) to serve the area to invoke § 1926.").

[3]*Bell Arthur* makes clear that this circuit already requires at least a showing of physical capability to provide service within a reasonable time of request. *See Bell Arthur*, 173 F.3d at 526.

begins with the text of the statute. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "[I]n analyzing the meaning of a statute, we must first determine whether the language at issue has a plain and unambiguous meaning." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 (4th Cir. 1999) (internal quotation marks omitted). Section 1926(b) states that water service "provided or made available" by any qualifying water association "shall not be curtailed or limited" by certain municipal action. 7 U.S.C.A. § 1926(b). Because § 1926 does not include an express definition of "provided or made available," we look to the ordinary or natural meaning of the terms. *See FDIC v. Meyer*, 510 U.S. 471, 476 (1994). To "provide" ordinarily means "to make available," to "furnish," to "supply," or to "equip." *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1556 (2001). To "make available" ordinarily means to "render" "suitable or ready for use." *Id.* at 142, 1161 (defining "make" and "available" in relevant parts). As noted above, Chesapeake presses upon us a broad interpretation of "made available" that would include any area that Chesapeake is physically capable of serving.

Mindful that "courts should venture beyond the plain meaning of the statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary, in which a literal application of the statute would thwart its obvious purpose, or in which a literal application of the statute would produce an absurd result," *Holland*, 181 F.3d at 603 n.2 (citations omitted), we believe that Chesapeake's interpretation of § 1926(b) would contravene the intention of Congress in passing the statute and would lead to an absurd result. The legislative history of § 1926(b) indicates that Congress intended for the statute "to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." S. Rep. No. 87-566, at 67, 1961 U.S.C.C.A.N. at 2309. This explanation "casts the statute's purpose in a defensive light," suggesting "that the goal of the statute is only to protect territory already served by a rural water association from municipal expansion into the rural water association's area." *Le-Ax*, 346 F.3d at 708.

Moreover, "nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative

intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *In re Chapman*, 166 U.S. 661, 667 (1897). Therefore, we will not construe § 1926(b) in a manner that leads to absurd results. *See Nixon v. Mo. Mun. League*, 124 S. Ct. 1555, 1564 (2004); *United States v. Davis*, 53 F.3d 638, 642 (4th Cir. 1995). To give Chesapeake the exclusive right to provide service to adjacent areas based solely on its physical capability of providing such service would give Chesapeake the ability to expand its exclusive franchise area unilaterally and limitlessly. Under the rule Chesapeake presses upon us, once a water association is granted authority to serve *some* area—no matter how small—it could then expand its monopoly indefinitely by simply developing the physical capability to serve locations beyond its original franchise area. As put by the County, such a rule would "allow Chesapeake to become the 'kudzu vine' of utility companies growing at the will or whim of Chesapeake throughout the County simply through the installation of water lines to the edges of its ever expanding service area." Br. of Appellee at 19. As the *Le-Ax* court recognized, "[t]his vision of § 1926(b) is expansive indeed." *Le-Ax*, 346 F.3d at 709. We doubt that Congress intended such a result.

Rather, we believe that the test articulated by the Sixth Circuit, by requiring a water association invoking § 1926(b) to demonstrate that the disputed area is within the geographic boundaries of the association's existing franchise area, *see id.* at 707, best effectuates Congress' intent in passing § 1926(b). We therefore adopt the *Le-Ax* test as our own. For purposes of § 1926(b), to prove that it has provided or made available service, a water association must demonstrate that (1) it is physically capable of serving the area in dispute, (2) it has the legal right under state law to do so, and (3) the disputed area is within the geographic boundaries of the association's existing franchise area. As the new developments were not within the geographic boundaries of Chesapeake's existing franchise area, we affirm the decision of the district court granting summary judgment in favor of the County on this issue.[4]

---

[4]We acknowledge but do not decide a related issue: whether the County's plan to provide service to the new developments qualifies as an infringing action under § 1926(b). As noted above, § 1926(b) prohibits only certain forms of competitive behavior. Because the new develop-

B.

Next, Chesapeake argues that it is entitled to injunctive relief to prevent the County from tapping into and depleting the aquifer from which Chesapeake draws its water to service its existing customers. By depleting the aquifer, Chesapeake contends, the County would curtail or limit the service provided by Chesapeake in violation of § 1926(b). Indeed, the County has applied for permission from the state to drill new wells within 2,500 feet of Chesapeake's existing wells. Nevertheless, the district court rejected Chesapeake's argument, finding the possibility of harm from depletion of the aquifer too speculative as a matter of law to sustain relief under § 1926(b). Chesapeake argues that the district court ignored the affidavit of an expert submitted by Chesapeake in opposition to summary judgment. The expert, a hydrogeologist with 23 years' experience, averred that the County's proposed wells "will cause significant interference to one or more of Chesapeake's existing wells . . . ." J.A. 215. This expert opinion, argues Chesapeake, provided a sufficient dispute of material fact to withstand summary judgment. The County embraces the district court characterization of the harm as "speculative." It points out that it has merely *applied* to the state for permission to drill the wells; it has not yet made a final decision where (or even whether) to drill them.

Even assuming that the County would tap into the aquifer and thereby impair Chesapeake's ability to serve its existing customers, we conclude that § 1926(b) provides no relief against the County. As noted above, § 1926(b) prohibits only certain forms of competitive behavior, including "curtailment or limitation of the associations' service areas *through annexation* or *through the imposition of conditions*

---

ments were already within the County's borders, the County has not annexed the land on which the new developments sit and would have no reason to do so. *Cf. Le-Ax*, 346 F.3d at 703 (noting in the context of a § 1926(b) claim that the disputed area was outside both parties' borders). Nor has the County imposed conditions upon Chesapeake for the privilege of providing service to the new developments. As neither party has addressed this issue in its briefs, and as our disposition of this case does not turn on this issue, we decline to resolve it.

*for service* such as the requirement of a franchise, license, or permit."
*Bell Arthur*, 173 F.3d at 520 (emphasis added). Simply tapping into
an aquifer, even in a way that impairs a qualifying water association's
ability to provide service, is not an infringing action under the statute.
We therefore affirm the decision of the district court granting sum-
mary judgment in favor of the County on this issue.

### C.

Finally, Chesapeake argues that the district court ignored a dis-
puted issue of material fact involving the precise scope of Chesa-
peake's existing franchise area, *i.e.*, whether the new developments
were already within the geographic boundaries of its franchise area.
Chesapeake points to arguably vague language in the original docu-
ment from the County defining the boundaries of its franchise area.
Chesapeake also notes that it provides service to several customers
located outside of the Chesapeake Ranch Estates.

Chesapeake raised this argument for the first time while opposing
summary judgment before the district court. The district court dis-
missed the argument as an attempt to "*create* a dispute of material
fact by now attempting to re-interpret language in a contract entered
into over 40 years ago." *Chesapeake Ranch Water*, 301 F. Supp. 2d
at 429. The decision of the district court on this issue was correct. On
three occasions after the 1960 grant, Chesapeake applied for, and the
County granted, expansions of the original franchise area. In each of
these agreements between Chesapeake and the County, the under-
standing of the parties as to the scope of the original franchise area
was clear. Each of the agreements referred to the scope of the original
franchise area as encompassing "the Chesapeake Ranch Estates Sub-
division." J.A. 98, 99, 101. That Chesapeake occasionally provided
service to customers outside of its franchise area did not, by itself,
expand the scope of the franchise area. Only the County has authority
to expand the scope of an association's franchise area. *See* Md. Ann.
Code art. 25, § 3D(b). We therefore affirm the decision of the district
court on this issue.

### III.

For the reasons stated above, we affirm the decision of the district
court granting summary judgment in favor of the County.

*AFFIRMED*