NIEMEYER, Circuit Judge,
dissenting:
Torres, having proceeded in forma pauperis in two separate actions that he filed, now owes fees for those actions. Section 1915(b) provides that a prisoner filing an action or appeal in forma pauperis must pay “the full amount of a filing fee.” 28 U.S.C. § 1915(b)(1). Recognizing, however, the financial status of prisoners proceeding in forma pauperis, the section does not require the prisoner to pay the full amount of this fee up front. Rather, it authorizes him to pay an initial partial payment of the fee consisting of 20% of the greater of the average monthly deposits made to his prison account or the average monthly balance in the account, id., and the remainder in monthly installments of 20% of the preceding month’s income, id. § 1915(b)(2).
In a remarkably proactive approach to statutory interpretation, the majority holds that, even though § 1915(b)(1) requires the prisoner to make an initial partial payment on the filing fee for each action or appeal filed, § 1915(b)(2) somehow applies only to the first action or appeal filed, until the fee for that action is paid in full, and then sequentially to each other action or appeal filed, until all are paid. Stated otherwise, the majority reads § 1915(b)(2) to “cap[] the amount of funds that may be withdrawn from an inmate’s trust account at a maximum of twenty percent regardless of the number of cases or appeals the inmate has filed.” Ante at 252 (emphasis in original). It does this even as it recognizes that the statute contains no language to impose the “cap”; indeed, according to the majority, the statute “is simply silent.” Ante at 244 (emphasis in original).
Reacting to statutory “silence,” the majority answers a “call” “to determine what Congress would have done had it thought about the problem.” Ante at 245 (emphasis added). To do this, it focuses on selective statements of Senators in the legislative history about what the bill would accomplish, concluding that “Congress sought to provide initial deterrents against [prisoners’] suits, but not to punish prisoners for electing to litigate.” Ante at 247 (emphasis in original). From that intuitive conclusion, which, in fact, is unsupported by the legislative history, it reasons that “[t]he garnishment of more than twenty percent of an indigent inmate’s already meager income crosses the line from deterrence to punishment and was not the intent behind § 1915.” Ante at 247 (citing Senator Kyi’s inapposite statement, “The filing fee is small enough not to deter a prisoner with a meritorious claim, yet large enough to deter ... multiple filings,” to support this conclusion). And the majority reaches this conclusion even though it fails to explain how requir *254 ing a litigant to pay preestablished filing fees is punishment.
The majority crowns its analysis with the conclusion that its cap on filing fees is necessary because requiring the prisoner to make the required monthly payment for each action or appeal filed “could present a constitutional problem of access to courts for prisoners.” Ante at 247-48. Indeed, it refers to the reading of the statute that requires a prisoner to pay the full filing fee in each case that he chooses to file as a “pyramiding” scheme. See ante at 248-49, 250-51. Without the citation of authority, the majority concludes that the requirement that payment be made for each action or appeal filed would mean that “prisoners under a [fee] ‘per case’ regime may be completely barred from filing meritorious claims,” ante at 248 (emphasis added), and that the bar created from the prisoner’s financial burden would violate the Constitution, despite our court’s earlier conclusion to the contrary. See Roller v. Gunn, 107 F.3d 227, 231-33 (4th Cir.1997) (noting that a prisoner simply has to make a financial choice, as does everyone else, of how to spend his money).
While there may be a textual analysis of § 1915(b)(2) that could give some support to the majority’s holding, it is not obvious, and the majority does not undertake it. To the contrary, the majority simply speculates about “what Congress would have done had it thought about the problem.” Ante at 245. This form of statutory interpretation is fundamentally unsupportable. See Lamie v. United States Trustee, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (condemning a court’s insertion of an absent word into statute as an inappropriate “ ‘enlargement of it by the court’ ” (quoting Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (noting that supplying inadvertent omissions to a statute “transcends the judicial function”))). And, of course, implementing an interpretation without textual support has never before been recognized in our precedents. See, e.g., United States v. Passaro, 577 F.3d 207, 213 (4th Cir.2009) (“When interpreting any statute, we must first and foremost strive to implement congressional intent by examining the plain language of the statute”); Chesapeake Ranch Water Co. v. Bd. of Comm’rs of Calvert County, 401 F.3d 274, 279 (4th Cir.2005) (“As in all cases of statutory interpretation, our inquiry begins with the text of the statute”); U.S. Dep’t of Labor v. N.C. Growers Ass’n, 377 F.3d 345, 350 (4th Cir.2004) (“When interpreting statutes we start with the plain language”); United States v. Bell, 5 F.3d 64, 68 (4th Cir.1993) (“The proper interpretation of [a statute] must begin with the plain language of the statute, and absent ambiguity or a clearly expressed legislative intent to the contrary, the statute must be given its plain meaning”); see also Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 2271, 171 L.Ed.2d 41 (2008) (“The canon of constitutional avoidance does not supplant traditional modes of statutory interpretation. We cannot ignore the text and purpose of a statute in order to save it”).
Aside from the merits of the dispute, I also submit that this case became moot when Torres was released from prison, and therefore it should be dismissed. Because of this and because the interpretation of § 1915(b)(2) most faithful to its text mandates that a prisoner make the 20% monthly payment toward the filing fees for each action or appeal he has filed, I respectfully dissent.
I
The issue in this case arises from a letter sent by Torres to the Clerk of the district court and forwarded to the Clerk *255 of our court, complaining that prison officials were withholding 40% of his monthly prison income to pay the fees for two cases that he had filed against prison officials complaining about prison conditions.
In the first case, Torres sued prison officials, claiming that their failure to repair a flickering night light in his cell violated his Eighth Amendment rights. The district court dismissed the suit under 28 U.S.C. § 1915A(b)(1), and we affirmed. We also directed Torres to pay the fees for the action in accordance with 28 U.S.C. § 1915(b). Following our order, Torres paid the initial partial fee, and prison officials began collecting 20% of Torres’ monthly income to pay the remainder. In the second case, Torres again sued prison officials, this time alleging that they had violated his First and Fourteenth Amendment rights by denying his request to order pictures of nude women from a commercial, online publisher. The district court dismissed the action, and we affirmed. We again directed prison officials to collect fees in accordance with § 1915(b). At the time we issued the second order, prison officials were still withdrawing 20% of Torres’ income to pay the filing fees for the first lawsuit. To accommodate our order, prison officials then began drawing an additional 20% for the second lawsuit, for a total of 40%.*
When Torres noticed that 40% of his prison account income was being withheld to pay filing fees, he sent a letter to the Clerk of the district court asking why 40% was being withheld and requesting that he be “stopped being charged 40%” to pay his filing fees. The Clerk of the district court forwarded the letter to the Clerk of this court, where the Clerk docketed the letter as a motion for refund of fees, which is now before us. The question presented, accordingly, is whether the terms of the Prison Litigation Reform Act (“PLRA”)— particularly § 1915(b)(2) — apply to each action or appeal that a prisoner files or whether, instead, they somehow impose a “cap” on total monthly filing-fee payments, regardless of how many cases a prisoner has filed.
The PLRA was enacted in 1996 in response to Congress’ conclusion that prisoners were flooding the courts with mostly frivolous litigation. See Roller, 107 F.3d at 230-31. “Finding that the proliferation of prison litigation was due significantly to the lack of economic disincentives to filing meritless cases,” the Act imposed the requirement that inmates pay the full amount of filing fees. See id. Because of the prisoners’ lack of financial resources, however, the PLRA authorized prisoners to pay the fees in installments, as specified in the Act.
Under the PLRA, prisoners are required to make two types of installment payments on their filing-fee debts. Subsection (b)(1) of § 1915 sets up the first of these payments, which is an “initial partial filing fee,” required to be paid by the prisoner at the time he files the suit, equal to 20% of the greater of his average monthly income or his average monthly prison account balance. See 28 U.S.C. § 1915(b)(1). Once the prisoner has made this initial partial payment, subsection (b)(2) then requires him to continue paying monthly installments, each equal to 20% of his monthly income, until the debt is paid. See id. § 1915(b)(2). This case requires us *256 to determine whether the installment payments established by subsection (b)(2) must be made for each action or appeal that a prisoner files or whether it must be made on only the first action filed until the fee debt in that action is fully paid and then on the second action.
The majority concludes that the PLRA imposes a sequential payment plan by which a prisoner pays installments for his first case through deductions of 20% of his monthly income and starts to pay installments for a second case only when the fees for the first case are paid in full. It thus holds that the 20% withholding requirement provided in the Act is a “cap,” regardless of the number of cases filed by the prisoner. This holding gives prisoners, in effect, a free ride after they file their first piece of litigation.
Fairly read, however, § 1915 does not even hint at the “cap” and sequential payment plan suggested by the majority. Read as a whole, the language and operation of § 1915 persuasively point to the conclusion that its terms apply to each action or appeal filed by a prisoner and that they do not make a special accommodation when the prisoner files multiple actions or appeals. If § 1915 as a whole applies to each action or appeal the prisoner files, then a fortiori § 1915(b)(2), providing for the payment of fees in installments, also applies to each action or appeal filed. Looking at the entirety of § 1915, there can be little doubt that there is no Presidents’ Day sale for multiple actions, providing that if the prisoner begins paying for the first, he can file the second at a discount.
Subsection (a) of § 1915 begins by providing, “Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding ... without prepayment of fees.” Id. § 1915(a) (emphasis added). Subsection (b) then connects to subsection (a) by providing, “Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.” Id. § 1915(b)(1) (emphasis added). Both subsection (a) and subsection (b) address the fees incurred in any civil action filed by a prisoner. Subsection (b)(1) continues by providing that in the civil action filed by the prisoner, the prisoner must make a down payment of the filing fees for which he will become obligated to pay, consisting of 20% of the greater of his average monthly income or average account balance for the preceding six months. See id. § 1915(b)(1). As Torres correctly notes, a prisoner must pay this initial partial filing fee each time he files an action or an appeal. See id. § 1915(b)(1); Reply Br. at 6 (“Except in rare circumstances that do not apply here, the law absolutely requires an inmate to make this initial payment every time and at the time he/she commences a legal action” (emphasis in original)).
Addressing that same action or appeal for which the prisoner must make a down payment, subsection (b)(2) requires that the prisoner pay the remainder of the fees in installments consisting of 20% of his monthly income until the full fee is paid. See 28 U.S.C. § 1915(b)(2). The fact that subsection (b)(2) refers to the same action or appeal addressed in subsection (b)(1) is made clear by the introductory clause of subsection (b)(2): “After payment of the initial partial filing fee [required by (b)(1)]____” Thus, the initial down payment provided for in subsection (b)(1) is the triggering condition for the installments provided for in subsection (b)(2), and both provisions apply to the same civil action or appeal filed. Indeed, subsection (b)(2) can be referring to nothing other *257 than the action referred to in subsection (b)(1), which requires the down payment— “the initial partial filing fee.” Thus, if, as Torres concedes, a prisoner must make the down payment on the filing fees in every action or appeal filed, it follows that the prisoner must also make the installment payments on the remainder of those filing fees in every action or appeal filed, in accordance with subsection (b)(2). Subsection (b)(2) makes no exception for multiple filings.
It makes no textual sense to conclude that subsection (b)(1) imposes a down payment (“initial partial filing fee”) in each action that a prisoner files and then somehow conclude from the text that subsection (b)(2), providing for the payment of the remainder of the filing fees, applies only to the first action that the prisoner files, and not to any subsequent action that the prisoner files, until the fees in the first action are paid in full. Nothing — not even logic — supports such an interpretation. Yet, that is precisely what the majority holds is appropriate.
As an additional indicator that subsection (b)(2) applies to each action filed, subsection (b)(2) directs prison officials to forward the installments “to the clerk of the court,” obviously referring to the Clerk of the court where the action or the appeal was filed. See Atchison v. Collins, 288 F.8d 177, 181 (5th Cir.2002). Thus, if the prisoner files his first action in the Eastern District of Virginia, he makes the down payment and forwards it to the Clerk of the district court in the Eastern District of Virginia, as well as the installment payments for the remainder. If the prisoner files his second action in the District of Maryland, he must again make the down payment, but this time to the Clerk of the district court in the District of Maryland, and likewise he must forward the remainder of the filing fee in installments to that Clerk.
Finally, it is clear from the rest of § 1915 that its terms are meant to govern each action or appeal filed under the authorization of subsection (a)(1). Specifically, subsection (e) provides, “Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that” the allegation of poverty is untrue or the case is defective in some way. 28 U.S.C. § 1915(e)(2). Likewise, subsection (f) authorizes the court to render judgment for costs “at the conclusion of the suit or action as in other proceedings.” Id. § 1915(f)(1). Reading each subsection of § 1915, it is clear that the focus of that statute is on each individual action or appeal filed under its authorization and that it makes no attempt to govern any aspect of actions other than the one before the court. See also id. § 1915(c) (authorizing the court to direct the United States to pay the expenses of preparing transcripts and appellate records if required by the case); id. § 1915(d) (providing for the same remedies and process in a case filed under § 1915 as are available in other cases); id. § 1915(g) (prohibiting a prisoner from bringing a new action or appeal under § 1915 if he has previously had three suits dismissed for being frivolous, malicious, or for failing to state a claim). To interpret subsection (b)(2) as imposing a global cap on filing fees incurred in cases other than the one presently before the court would divorce that subsection from the rest of § 1915 — a result unsupportable by the text of the statute.
Despite these indications from the statute’s text, Torres argues — and the majority accepts — that the word “any” in subsection (b)(1) somehow imposes a limit on the fees that can be collected under subsection *258 (b)(2). But this analysis simply does not work. Even if “any” means “any and all,” as the majority concludes, subsection (b)(1) then provides simply that a prisoner must pay an initial partial payment of “any and all” court fees required in the civil action. Subsection (b)(2) then simply latches on to subsection (b)(1) by providing for the way in which the prisoner pays the remainder of the fees referred to in subsection (b)(1). There is nothing in either of those subsections to indicate that if the prisoner is already in the process of paying a filing fee for a different, earlier-filed action or appeal, he is spared the requirement of paying the installments for the current action.
Both Torres and the majority also argue, without identifying textual support for their interpretation, that statements in the legislative history suggest that Senators were sensitive to charging excessive costs and that those statements somehow support imposing a limit or cap on the statute’s requirement that the prisoner pay filing fees in each action or appeal he files. A more complete reading of the references cited from the legislative history, however, suggests that the Senators did not speak of an accumulative cap on fees, but rather intended that prisoners make a choice each time they file a lawsuit about whether the “lawsuit [is] worth the price.” See 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyi).
Finally, both Torres and the majority argue that if the court were to interpret the statute as requiring the prisoner to pay the monthly installments on the filing fees in each case or appeal filed, serious constitutional problems could arise when the prisoner files multiple actions because the required payments would impose a financial burden that denies the prisoner access to the courts. This argument, however, is advanced without legal support. Indeed, we have held to the contrary, as explained in Roller:
Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, ‘he has demonstrated an implied evaluation of that suit’ that the courts should be entitled to honor.
107 F.3d at 233; see also Atchison, 288 F.3d at 181.
Moreover, the statute expressly guards against any access problem in § 1915(b)(4), which provides that “[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.” See also 28 U.S.C. § 1915(b)(1) (“The court shall assess and, when funds exist, collect ....” (emphasis added)). Plainly, even in the situation where the filing of five lawsuits has caused a prisoner’s entire monthly income to be devoted to filing fees, § 1915(b)(4) preserves his ability to challenge the conditions of his confinement in court, assuming, of course, he has not run afoul of the other provisions of § 1915 meant to prevent frivolous and repetitive lawsuits. See, e.g., id. § 1915(g). Thus, even in the majority’s unlikely hypothetical, no constitutional question will arise.
In conclusion, a straightforward reading of § 1915 indicates that a prisoner must pay the full fees in each action or appeal *259 that he files and that his payment of those fees is discharged by a down payment, as provided for in subsection (b)(1), and by installments for the remainder, as provided in subsection (b)(2). Nothing can be gleaned from the statute to suggest that these requirements are administered differently in the second action or, indeed, the third action filed by the prisoner. In embracing this natural reading, I join the majority of the circuits — indeed, all of the circuits except for the Second Circuit— that have addressed this issue. See Atchison v. Collins, 288 F.3d 177 (5th Cir.2002); Lefkowitz v. Citi-Equity Group, 146 F.3d 609, 612 (8th Cir.1998); Newlin v. Helman, 123 F.3d 429, 436 (7th Cir.1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir.1997).
Accordingly, I would affirm the collection of the filing fees from Torres for each action filed, as has been done, and deny his motion for a refund.
II
Quite apart from the merits, as a matter of subject matter jurisdiction, which was not briefed by the parties but which arises by reason of the fact that Torres has now been released from custody, I respectfully suggest that this case is moot and that, accordingly, we must dismiss it.
“It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy.” City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). “[A] federal court has neither the power to render advisory opinions nor ‘to decide questions that cannot affect the rights of litigants in the case before them.’ ” Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (quoting North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)); see also Hayburn’s Case, 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792). Rather, “[t]o be cognizable in federal court, a suit ... ‘must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.’ ” Rice, 404 U.S. at 246, 92 S.Ct. 402 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).
In order to ensure that federal courts do not issue unconstitutional advisory opinions, the Supreme Court has established several justiciability doctrines that must be satisfied to confer jurisdiction on a federal court, including the doctrines of standing and mootness. Along with injury and causation, the “irreducible constitutional minimum of standing” requires a party seeking relief in federal court to establish that the injury complained of is “redressfable] by a favorable decision.” See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, if relief from the injury is not “ ‘likely’ to follow from a favorable decision,” the party seeking relief has no standing and has not presented a justiciable case or controversy. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Likewise, because “[m]oot questions require no answer,” Mo., Kan. & Tex. Ry. v. Ferris, 179 U.S. 602, 606, 21 S.Ct. 231, 45 L.Ed. 337 (1900), federal courts “[are] not empowered to decide moot questions or abstract propositions,” California v. San Pablo & Tulare R.R., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747 (1893).
The relief that Torres sought in this case was to “stop” withholding 40% of his prison account income to pay his filing-fee *260 indebtedness. But because of Torres’ release from prison, prison officials will no longer be collecting payments on Torres’ filing-fee debts. See DeBlasio v. Gilmore, 315 F.3d 396, 397 (4th Cir.2003). Accordingly, there is no continuing conduct to enjoin. Moreover, it is clear from Supreme Court precedent that the possibility Torres may one day be required to resume making payments under § 1915(b)(2) on his filing fees should he reenter the prison system is far too speculative to justify finding a justiciable claim for injunctive relief. See Lyons, 461 U.S. at 105-08, 103 S.Ct. 1660 (holding that Lyons did not have standing to seek an injunction prohibiting the Los Angeles Police Department from employing chokeholds because he could not establish that he would be subjected to a chokehold in the future); O’Shea v. Littleton, 414 U.S. 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that no case or controversy existed to enjoin local magistrates from discriminating in the enforcement of criminal laws because it was to be assumed that “[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners”). Indeed, it is debatable whether, in this circuit, Torres will ever have to resume making payments under § 1915(b)(2) even were he to reenter the prison system. See DeBlasio, 315 F.3d at 397 (“We hold that the PLRA fee requirements are not applicable to a released prisoner (assuming the prisoner made any required payments while in prison) and that his obligation to pay filing fees is determined by evaluating whether he qualifies under the general in forma pauperis provision of 28 U.S.C. § 1915(a)(1)”).
The majority rests its jurisdiction on a phantom claim for a refund for “overpayment” of filing fees. In fact, however, Torres makes no such claim. Torres asked simply why 40% of his prison account income was being withheld and requested that he be “stopped being charged 40%” to pay his filing-fees indebtedness.
Moreover, there is no suggestion that Torres does not owe the full amount of the filing fees charged in the two cases. The applicable statute requires that he pay the full amount of filing fees in each case that he files. See 28 U.S.C. § 1915(b)(1). Nor is there any suggestion that the amount collected from Torres was greater than the total amount he owed for filing fees. Accordingly, Torres does not and cannot claim to have overpaid the filing fees. While it is true that he claims that 20%, not 40%, should be withheld to pay a given installment against his filing-fee indebtedness, his payment of 40% in lieu of 20% does not entitle him to a refund.
At bottom, with no continuing conduct to enjoin and an insufficient likelihood that the conduct will resume, Torres’ claim that he be “stopped being charged 40%” became moot the moment he was released from prison. Therefore, no justiciable case or controversy now exists.
The majority provides no legal justification for the judicial power it gratuitously exercises over a moot dispute other than to conclude, “We, however, find it appropriate for the guidance of the courts and corrections officials in this circuit, to explain why, while Torres was in custody, withholding of 40% of his monthly income was inconsistent with our orders and, ultimately, with the PLRA.” Ante at 241 n. 1. This desire “to explain,” however, provides no basis to render this a justiciable case or controversy under Article III of the Constitution.
The majority opinion is, therefore, nothing more than an unconstitutional advisory opinion on the operation of 28 U.S.C. § 1915(b)(2). Indeed, this is manifested *261 by the very relief it orders. It commands that “the Warden of Red Onion State Prison shall collect and remit to the clerk of the United States District Court for the Western District of Virginia, and the clerk shall accept, no more than twenty percent of an inmate’s preceding monthly income or trust account balance, as the case may be, as payment toward his filing fees obligation.” Ante at 252. Regardless of the “guidance” this directive might provide for future inmates, Torres is the only petitioner in this case. Because he is no longer in the custody of the Red Onion State Prison, this directive has absolutely no effect on him. This is the hallmark of an advisory opinion.
Because any relief requested is beyond the powers of this court, the case must be dismissed.

 Upon receiving funds from Torres’ prison account, the district court erroneously applied the full 40% withheld to the filing-fee debt from Torres' first suit. Consistent with § 1915(b)(2)’s direction, however, that a prisoner make monthly payments on the filing-fee debts for each action or appeal filed, the district court should have applied 20% of Torres’ monthly income to the filing-fee debts on each of his two cases.